IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| LINDA MARIE G.,[1]<br><br>    Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 25-CV-32-CJW-KEM<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Linda Marie G. seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that the administrative law judge (ALJ) erred by finding her mental impairments nonsevere at step two. I recommend **reversing** the ALJ's decision and **remanding** for further proceedings.

## I.     BACKGROUND

Plaintiff has a strong work history. AR 166, 174-75, 189-90, 357.[2] She worked in production at a medical supply manufacturing company from 2012 to 2021.[3] Prior to that, she worked in production at a bakery for years. *Id.* She quit working on December

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] "AR" refers to the administrative record below, filed at Doc. 6.

[3] She suffered a "nervous breakdown" in 2017 and took three months of leave under the Family Medical Leave Act. AR 194, 363.

10, 2021, at the age of 59, when her employer closed its plant in Iowa and moved operations out of the country. *Id.*

Plaintiff suffers from depression and anxiety. Throughout 2021 (while still working full time), she saw her primary care provider, Timothy Momany, MD, for mental-health medication management and Kristie Yoder, Licensed Mental Health Counselor, for therapy. *See, e.g.*, AR 282, 344-48. Dr. Momany prescribed alprazolam (Xanax), a benzodiazepine; bupropion (Wellbutrin), an antidepressant; and venlafaxine (Effexor), an antidepressant. AR 348. Plaintiff met with Therapist Yoder weekly until April, when she switched to sessions every three to four weeks because she was doing so well; then increased to biweekly sessions in August 2021 due to work anxiety. AR 281-344.

When Plaintiff initially lost her job, she planned to rely on severance pay and look for new employment after the holidays. AR 280-81. In January 2022, she reported working on her resume and job hunting, but then she unexpectedly underwent gallbladder surgery in February 2022. AR 274, 278, 405. In February and March 2022, she reported low mood and lack of motivation, and Dr. Momany increased her dosage of bupropion. AR 267-73. Thereafter, she reported engaging in activities she had been putting off for months, such as working on her taxes, meeting up with friends, and cleaning her house. AR 263-66.

In June 2022, Therapist Yoder's treatment notes reflect Plaintiff continued to upkeep her house but also had increased agitation and worries. AR 261-62. Plaintiff applied for disability benefits on June 27, 2022, alleging a disability onset date of December 10, 2021, based on anxiety and depression. AR 61. Treatment records from July and August 2022 reflect ups and downs with reported issues sleeping (too much or too little), lack of motivation, and social isolation; but also meeting up with friends and working on her house and taxes. AR 260, 374-79. In early August 2022, Dr. Momany noted "consider[ing] further augmentation of mood with [a third] agent" but ultimately

did not adjust Plaintiff's medications. AR 379. In September 2022, Plaintiff increased the frequency of her appointments with Therapist Yoder to weekly, noting feeling overwhelmed with house and family issues and disability paperwork. AR 371-72, 385. Also in September, she met with psychologist Patrick Ewing, MS, for a consultative examination on behalf of the Social Security Administration. AR 361-68.

In early October 2022, Plaintiff reported that her family was worried about her because she skipped Oktoberfest festivities. AR 386. She also noted she "managed" to go to a classmate's funeral. *Id.* Her brother called Therapist Yoder to express concerns about her "obsession" with her dog. AR 387. By late October 2022, Therapist Yoder's treatment records reflect improvement, which continued through mid-December (she reported being calmer and beginning to work on her back taxes). AR 389-90, 472-74; *see also* AR 475. In late December 2022, she reported low mood and issues with her neighbors and finances. AR 471. She continued to report low mood in January and early February 2023, but she also dropped back down to biweekly therapy appointments and was "eager to tell [Therapist Yoder] about what she ha[d] been cooking." AR 470, 497-98. Later in February, Therapist Yoder noted Plaintiff felt "content" and "positive." AR 488-89, 494, 496. Plaintiff reported working in her yard and cleaning up after her dog, but she also reported continuing to stay home other than monthly trips to the grocery store for curbside pickup or for doctor's appointments. *Id.* At an annual wellness appointment with Dr. Momany, Plaintiff reported an occasional "diffuse itch" that she attributed to "anxiety and eczema," and Dr. Momany prescribed hydroxyzine as needed. AR 489, 493.

In mid-March 2023, Plaintiff reported isolating from her friends and being stressed out due to financial issues. AR 591. In early April, she was "more relaxed" and "upbeat" after resolving her money issues by cashing in some of her mom's assets. AR 590. In mid-April, she reported a low mood due to her dog's declining health and lack of motivation to work on her taxes but did report visiting a friend. AR 589. In early

3

May, she reported anxiety over her disability denial and dog's health. AR 588. Later in May, she noted her brother and nephew accused her of failing to perform necessary upkeep on the house and yard and threatened to have her committed, and she reported increased depression after her dog's death. AR 586-87. She met with Dr. Momany in late May 2023 and asked about adjusting her medications, but he did not think it was a good time due to recent stressors. AR 582-85. She began meeting with Therapist Yoder weekly in June 2023 and was more upbeat in the latter half of the month. AR 576-81. In mid-July 2023, she reported to Dr. Momany increased stress due to finances and panic attacks with heart palpitations and chest pain. AR 544-47. He added clonazepam (Klonopin, a benzodiazepine) to her medication regimen and referred her to a cardiology consultation. *Id.* She reported the medication change improved her anxiety and sleep. AR 570. Treatment records from late July to early October 2023 sometimes reflect low mood and feeling emotional and other times reflect a more relaxed demeanor. AR 557-71. She reported spending her birthday with her family, working on finances, doing laundry, arranging to get her roof fixed, having her nephews help around the property, and shopping with her EBT card; she also reported anxiety (including panic attacks) surrounding her finances. *Id.*

The Social Security Administration denied Plaintiff's disability application on initial review in October 2022 and reconsideration in March 2023. AR 60-78. As part of those reviews, state agency psychological consultants Beverly Westra, PhD, and Jennifer Ryan, PhD, reviewed Plaintiff's treatment records and issued opinions on her mental limitations. AR 66-67, 75-77.

Plaintiff requested further review. The ALJ held a hearing in November 2023, at which Plaintiff and a vocational expert testified. AR 31-32. The ALJ issued a written opinion on March 7, 2024, following the five-step process outlined in the regulations[4] to

---

[4] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets

determine whether Plaintiff was disabled during the relevant time period. AR 13-26. At step two, the ALJ found Plaintiff suffered from anxiety and depression but found them nonsevere (the ALJ also found Plaintiff suffered from severe physical impairments). AR 15-19. The ALJ did not include any mental limitations in claimant's residual functional capacity (RFC).[5] At step four, the ALJ found Plaintiff could return to her past relevant work of production worker as generally and actually performed and as bakery helper as actually performed. AR 25-26. The ALJ found Plaintiff not disabled from December 10, 2021, through March 7, 2024, the date of the decision. AR 26.

The Appeals Council denied Plaintiff's request for review on January 21, 2025 (AR 1-3), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[6] Plaintiff filed a timely complaint in this court (Docs. 1, 3).[7] The parties briefed the issues (Docs. 10, 12, 13) and the Honorable C.J. Williams, Chief District Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[8] "Substantial evidence is less than a

---

the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." **Grindley v. Kijakazi**, 9 F.4th 622, 628 (8th Cir. 2021) (quoting **Goff v. Barnhart**, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **20 C.F.R. § 404.1520(a)(4)**. The claimant bears the burden of persuasion to prove disability. **Goff**, 421 F.3d at 790.

[5] RFC means "the most that a claimant can do despite her limitations." **Sloan v. Saul**, 933 F.3d 946, 949 (8th Cir. 2019).

[6] *See* **20 C.F.R. § 404.981**.

[7] *See* **20 C.F.R. § 422.210(c)**.

[8] **Grindley**, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

5

preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[9] The court "do[es] not reweigh the evidence or review the factual record de novo."[10] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[11]

Plaintiff argues that the ALJ erred in failing to find her mental impairments severe at step two. During step two, whether evaluating a physical or mental impairment, the ALJ must first "determine whether [a claimant] ha[s] a medically determinable . . . impairment[]" that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[12] If the ALJ determines the claimant suffers from a medically determinable mental impairment, the ALJ must next decide whether the impairment is severe by evaluating the degree of functional limitation caused by the impairment.[13] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities,"—such as "[u]nderstanding, carrying out, and remembering simple instructions; . . . [u]se of judgment; . . . [r]esponding appropriately to supervision, co-workers, and usual work situations; [or] . . . [d]ealing with changes in a routine work setting."[14] An impairment is not severe if it "would have no more than a minimal effect on the claimant's ability to work."[15] "Severity is not an onerous requirement for the

---

[9] ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007).

[10] ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994).

[11] ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

[12] **20 C.F.R. § 404.1521**.

[13] ***Id.***; **20 C.F.R. § 404.1522**.

[14] **20 C.F.R. §§ 404.1520(c), 404.1522**.

[15] ***Dixon v. Barnhart***, 353 F.3d 602, 605 (8th Cir. 2003) (quoting ***Simmons v. Massanari***, 264 F.3d 751, 755 (8th Cir. 2001)); *accord* **20 C.F.R. § 404.1522(a)**.

claimant to meet" (and has been described as a de minimus standard), "but it is also not a toothless standard."[16]

In addition, when evaluating the severity of a mental impairment, the ALJ must consider the claimant's limitations in "four broad functional areas: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; (3) adapting or managing oneself; and (4) interacting with others.[17] Although subject to exception, as a general rule, if the claimant suffers no more than mild limitations in each category, the claimant's mental impairments are not severe.[18] Here, the ALJ addressed each category and found Plaintiff suffered only mild limitations. AR 16-19. The ALJ did not find Plaintiff's mental impairments severe and included no mental-functioning limitations in the RFC, finding that she could return to her past unskilled work. AR 20, 25.

The ALJ largely relied on Plaintiff's activities of daily living, as well as the opinions of the state agency consultants and the psychological consultative examiner. AR 16-19. The ALJ found Plaintiff could do crossword puzzles, drive, pay bills, count change, handle a savings account, use a checkbook and money orders, shop, attend auctions and garage sales, cook and prepare crockpot meals, do laundry, and spend time with her niece and grandniece. AR 16-19; *see also* AR 41-44, 52-53, 179-86, 366. Plaintiff argues that the ALJ mischaracterized Plaintiff's statements of her activities of daily living.

In her July 2022 function report, Plaintiff checked boxes indicating she could manage her finances as found by the ALJ (pay bills, etc.). Plaintiff argues this ignores her issues with paying taxes, as documented in the treatment records. Therapist Yoder's

---

[16] ***Kirby***, 500 F.3d at 708; ***Hudson v. Bowen***, 870 F.2d 1392, 1395 (8th Cir. 1989).

[17] **20 C.F.R. § 404.1520a(c)(3)**.

[18] **20 C.F.R. § 404.1520a(d)(1)**.

7

treatment records reflect in late April 2022 that Plaintiff had begun to work on her taxes; in August 2022 that Plaintiff was working on her taxes; in December 2022 that Plaintiff had begun working on back taxes; in March 2023 that Plaintiff needed to pay taxes, and Therapist Yoder encouraged her to complete her taxes from last year and the year prior since she should have refunds; and in mid-April 2023 that Plaintiff was trying to catch up on taxes but had not gotten much done. AR 264, 374, 472, 589, 591. Although Plaintiff had issues completing her taxes (which went unacknowledged by the ALJ), substantial evidence does support Plaintiff's ability to manage her finances. Treatment records reflect that she was often stressed about her finances, but that she reported renting out an apartment in her house for extra money, was aware that her investments were losing value, pulled money from her retirement, cashed some of her deceased mother's assets, applied for and received food stamps, applied for a home equity loan from the bank and appealed the denial (unsuccessfully), and filed to obtain retirement funds from her deceased parents' estate (successfully). AR 372-73, 471, 557-59, 578, 580, 590. In addition, Therapist Yoder's November 2022 letter indicates Plaintiff "has struggled" but "been somewhat successful in learning skills to help her keep track of her finances." AR 382.

Plaintiff also challenges the ALJ's finding that she could do chores like laundry and house cleaning. In her July 2022 function report, when asked what has changed since her disability onset, she said that on bad days, she sits in her chair and gets up only to take her dog out; on "better days," she reported doing "a little laundry [and] maybe a few dishes." AR 180. When asked about household chores, she stated she sometimes did dishes and laundry if she ran out of clothes, but usually not on the same day. AR 181. She estimated she washed dishes once a week and did laundry every other week. *Id*. She explained that housework made her feel overwhelmed and that her therapist suggested she write a single chore on a Post-it note and throw it away when she completed the task. *Id*. She denied doing yard work. *Id*. At her September 2022 consultative

8

examination, she reported trying to force herself to clean the house but largely neglecting it, letting dishes pile up, and doing laundry only when she ran out of clothes. AR 366. At the hearing in November 2023, she reported doing minimal housework and laundry once in a while, wearing clothes straight out of the dryer without folding them. AR 42. She explained that some days, she would look at a "pile" and be disgusted with herself, but other days, she could acknowledge her inability to do chores due to depression. AR 51. Therapist Yoder's treatment notes frequently reflect that Plaintiff reported doing housework, if a little at a time. *See* AR 266 (March 2022: major house cleaning); AR 265 (April 2022: getting more things down around the house); AR 263 (May 2022: getting house cleaned); AR 380 (July 2022: making small gains on getting through things in the house); AR 374 (August 2022: doing little things around the house); AR 494 (February 2023: spent some days working outside in the yard and cleaning up after dog); AR 587 (May 2023: cleaning yard with brother and nephew when they confronted her about lack of involvement in house and yard maintenance; she characterized their statements as inaccurate); AR 581 (June 2023: cleaning yard after storm); AR 580 (June 2023: anxiety when cleaning after dog's recent death because expects dog to be there); AR 577 (June 2023: trying to stay motivated to get stuff done around the house); AR 562 (August 2023: thankful she completed all of her laundry). The treatment records support that Plaintiff was less limited in her ability to do housework than she portrayed to the Social Security Administration.

Plaintiff also argues the ALJ ignored Plaintiff's issues driving. Plaintiff reported in her function report that she can drive and did not report any issues. AR 182. At the hearing, she testified that at most, she drives 8 miles once a week to go to the doctor, and that she is also able to drive 20 to 30 miles to Walmart. AR 44. She said that if she has to drive to a bigger city, she has her niece or nephew drive her because the traffic makes her nervous (despite her familiarity with the city from her time driving deliveries for the bakery). *Id*. Plaintiff argues the ALJ ignored this testimony, but the ALJ did not

9

fully credit all of Plaintiff's testimony. The ALJ could instead rely on Plaintiff's function report reflecting no issues driving, especially since the treatment records do not show any complaints related to driving.

The ALJ recognized that Plaintiff cooked meals in the crockpot. Her July 2022 function report reflects she made microwave meals, cereal, crackers with cheese or peanut butter, toast, and meals in the crockpot once a month. AR 181. She also reported at the consultative examination that she made simple meals like sandwiches and in the crockpot. AR 366. Two treatment records reflect Plaintiff reported cooking (but not what). *See* AR 498, 580.

Plaintiff reported in July 2022 that she spent time with others only on the phone (texting or the occasional call). AR 183. She told the psychological consultative examiner in September 2022 that she had not had contact with friends in the last year, but she did enjoy visits from her niece and her young child. AR 366. She testified at the November 2023 hearing that shortly after losing her job, she went to lunch with a friend and felt panicky and had not gone anywhere since then. AR 53. She admitted to spending holidays with her family (including a recent Thanksgiving celebration with 15 relatives), but she denied attending weddings and other family obligations. *Id*. Although Plaintiff did report isolating at times to her providers,[19] treatment records reflect far more social involvement than Plaintiff reported to the Social Security Administration. *See* AR 266 (March 2022: connected with friends from school); AR 264 (April 2022: reached out to friends for lunch); AR 263 (May 2022: reached out to friends and met up for lunch); AR 380 (July 2022: has been more social, getting out with coworkers and family); AR 386 (October 2022: went to classmate's funeral); AR 589 (April 2023: had

---

[19] AR 272 (March 2022: felt bad that she did not go to her aunt's funeral); AR 260, 376, 489, 591 (July 2022, August 2022, February 2023, March 2023: reported isolating, lack of social interaction, and staying home other than grocery pickups and appointments); AR 386 (October 2022: family concerned that she was not social over Oktoberfest); AR 588 (May 2023: reported difficulties leaving the house and having social interactions with friends).

10

a good time visiting a friend); AR 570 (July 2023: celebrated birthday with family).

When asked about her hobbies and interests in her July 2022 function report, Plaintiff included "auctions, garage sales, goodwill, town events." AR 183, 186. When asked how often she did these things, she said, "I used to love doing all those things, after work, on weekends." *Id.* But in response to the question asking about changes since her illness began, she explained she "barely do[es] any of those things" now and does not "go to any of the places I wrote down." *Id.* She also testified that she used to love going to thrift stores and garage and estate sales, but that does not interest her anymore. AR 52. No treatment records reflect reports of attending these events. I agree with Plaintiff that substantial evidence does not support the ALJ's finding that Plaintiff's activities of daily living included attending auctions, garage sales, thrift stores, and town events. The ALJ relied on Plaintiff's ability to attend auctions and the like to support the ALJ's conclusion that Plaintiff suffered only mild limitations in social interaction and mild limitations in adapting or managing herself.

The Commissioner argues that any error is harmless, because the ALJ cited other evidence in support—including the medical opinions. Plaintiff argues that the medical opinions support that her mental impairments were severe. Generally, the ALJ's findings on "the claimant's ability to function in the workplace" must be supported by at least some medical evidence from a medical professional.[20] The ALJ found parts of opinions from Drs. Westra and Ryan (psychological state agency consultants) and Psychologist Ewing (the consultative examiner) persuasive. *See* AR 16-18. All three opinions reflect that Plaintiff had no issues with understanding and remembering instructions. AR 66, 75, 367. Drs. Westra and Ryan found Plaintiff suffered moderate limitations in sustaining

---

[20] *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).

concentration and persistence,[21] while Dr. Ryan found her abilities "adequate" in this area; the ALJ credited the latter opinion over the former. AR 18, 66-67, 75-76, 367. On the other hand, the ALJ relied on Drs. Westra and Ryan's finding on the checkbox form that Plaintiff suffered no "social interaction limitations,"[22] rather than Psychologist Ewing's opinion that her "social isolating . . . could contribute to problems dealing with peers and supervisors." AR 66, 75, 368. The ALJ is not required to rely entirely on a particular doctor's opinion[23] and may instead rely on portions of different medical opinions to support the ALJ's conclusion.[24]

The problem lies in the lack of medical opinion evidence supporting the ALJ's conclusion that Plaintiff suffered only mild adaptive limitations.

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting[, and] . . . . includes [r]esponding to demands; adapting to changes; managing your

---

[21] As a result, they limited Plaintiff to "moderately detailed, 3-4 step tasks on a sustained basis," as she would "struggle with highly complex tasks and keeping a rapid pace." AR 67, 75.

[22] The ALJ did not acknowledge (and neither do the parties) that Drs. Westra and Ryan appeared to include a social-functioning limitation in the narrative portion of their opinions, finding Plaintiff's "social functioning [wa]s adequate on superficial levels." AR 67, 76-77. Courts have generally held (based on guidance from the Social Security Administration) that the narrative portion of the opinion controls, rather than the checkbox form, when the claimant argues the ALJ failed to include moderate limitations reflected on the checkbox form. *See Sean H. v. O'Malley*, No. 24-CV-1004, 2024 WL 4590157, at *3 (N.D. Iowa Oct. 28, 2024) (collecting cases), *report and recommendation adopted,* 2024 WL 4948865 (Dec. 3, 2024); *see also* **Program Operations Manual System (POMS) DI 24510.060** (the checkbox form "is merely a worksheet to aid in deciding the presence and degree of functional limitations and . . . does not constitute the RFC assessment"; it is in the narrative "section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in [the checkbox form], in terms of the extent to which these mental capacities or functions could or could not be performed in work settings" (emphasis omitted)). I decline to address whether the checkbox or narrative portion controls when the checkbox reflects no limitations, but on remand, it may be wise for the ALJ to clarify the opinions with the state agency consultants to avoid any issue.

[23] *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

[24] *See Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (some medical evidence supported the ALJ's RFC determination when it incorporated some limitations found by the treating source and some limitations found by the state agency consultants).

12

psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.[25]

Drs. Westra and Ryan found plaintiff had moderate limitations in the ability to respond appropriately to changes in the work setting, explaining that Plaintiff "may need extra preparation to adapt to changes." AR 66-67, 76-77. Psychologist Ewing similarly concluded that Plaintiff's "ability to adapt to changes in the workplace appears compromised, as she seems to have been avoiding all stress and demands in her life for the past nine months, and "[i]t is unlikely that she will be able to simply reverse this pattern, all at once." AR 368. The ALJ found these opinions unpersuasive, based in part on his erroneous view of Plaintiff's activities of daily living that included attending auctions and garage sales. AR 18.

Overall, I agree with Plaintiff that the ALJ relied too heavily on her activities of daily living. Although substantial evidence supports the ALJ's conclusion that Plaintiff's activities of daily living were not as limited as alleged, neither were they as "normal" as found by the ALJ. The ALJ ignored Plaintiff's periods of isolation, use of order pickup, and inability to attend at least some big social events at times, such as Oktoberfest and her aunt's funeral. Neither did the ALJ acknowledge Plaintiff's increased number of therapy sessions and mental-health medication adjustments since losing her job. At the very least, the record supports a limitation related to adapting to changes in the workplace (and that Plaintiff suffered more than mild limitations in adaptive functioning).

Any error in failing to include an adaptive-functioning limitation is not harmless. The ALJ found Plaintiff could return to her past unskilled work with a specific vocational

---

[25] **20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(4)** (2024); *see also* **20 C.F.R. § 404.1520a(c)(3)**.

13

level of 2. AR 25. "[U]nskilled work include[s] the abilit[y] (on a sustained basis) . . . to deal with changes in a routine work setting."[26]

I recommend finding that the ALJ erred in failing to include any mental impairments at step two and any mental limitations in Plaintiff's RFC.

### III.  CONCLUSION

I recommend **reversing** the Commissioner's decision, entering judgment in favor of Plaintiff, and **remanding** for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[27] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[28]

**DATED** January 9, 2026.

_____
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[26] **SSR 85-15**, 1983-1991 Soc. Sec. Rep. Serv. 343, 1985 WL 56857, at *4 (Jan. 1, 1985).

[27] **Fed. R. Civ. P. 72**.

[28] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).